United States District Court
Southern District of Texas
**ENTERED**
September 03, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MARK ARMSTRONG AND** | § | |
| **ERIKA ARMSTRONG,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:18-CV-1238** |
| | § | |
| **WING ENTERPRISES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Defendant's Renewed Motion for Summary Judgment (Dkt. No. 96), Defendant's Renewed Motion to Exclude the Testimony of Dr. Peter Francis (Dkt. No. 97), and Defendant's Renewed Motion to Exclude the Testimony of Peter Poczynok (Dkt. No. 98). The Court has considered the motions, all other relevant filings, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that Defendant's Renewed Motion to Exclude the Testimony of Dr. Peter Francis (Dkt. No. 97) and Defendant's Renewed Motion to Exclude the Testimony of Peter Poczynok (Dkt. No. 98) be **GRANTED**. The Court **FUTHER RECOMMENDS** that Defendant's Renewed Motion for Summary Judgment (Dkt. No. 96) be **GRANTED** and the case be **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

This is a products liability case involving the Little Giant Alta-One ladder (the "ladder"), a

---

[1] This case was referred to Magistrate Judge Johnson pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. (*See* Dkt. No. 54.) The case was transferred to the Undersigned Magistrate Judge on July 10, 2020.

Defendant Wing Enterprises product.[2] The ladder is "a multi-use ladder system made up of three major components: one inner ladder assembly and two outer ladder assemblies that telescope over the inner section. The inner and outer ladder assemblies work together with hinge locks and Lock Tabs to adjust the ladder into different lengths and positions, including operating as an extension ladder."[3] "Lock Tabs are located on either side of the ladder and are intended to lock the extension portion of the ladder into place."[4]

While using the ladder during a home inspection, Plaintiff Mark Armstrong fell and sustained a significant head injury.[5] Two neighbors across the street from Armstrong witnessed his fall.[6] The neighbors testified that Armstrong landed on his back with the ladder on top of him and that he hit his head on the driveway, which left a bloodstain.[7] Emergency Medical Technician ("EMT") Devin Miracco ("EMT Miracco") appeared on the scene shortly after Armstrong's fall.[8] Contrary to the neighbors' testimony, EMT Miracco testified that Armstrong was lying on top of the ladder.[9]

Based on the neighbors' testimony, Plaintiffs' causation theory is that Armstrong set his ladder in a "false lock" condition, the ladder telescoped while Armstrong climbed the ladder, and resulted in his fall.[10] Plaintiffs define "false locked" as a condition where "the Lock Tabs would

---

[2] Dkt. No. 1 at 2.
[3] *Id.*
[4] *Id.* at 3.
[5] *Id.* at 4.
[6] Dkt. No. 98-1 at 4.
[7] *Id.*
[8] Dkt. No. 98-3 at 6.
[9] *Id.*
[10] *See* Dkt. No. 97-1 at 16; Dkt. No. 98-1 at 49–50.

appear secure, but would not traverse completely into the hole to ensure a complete lock."[11] As a result of the "false locked" condition that caused the ladder to telescope, Plaintiffs assert that Armstrong lost his balance and fell backward while holding the ladder. In support of their claims, Plaintiffs rely on two experts: Peter Poczynok ("Poczynok") and Dr. Peter Francis ("Dr. Francis"). Poczynok, a mechanical engineering expert, and Dr. Francis, a biomechanics and human factors expert, provided reports on Plaintiffs' "false lock" theory.[12] Poczynok proposes the "false lock" condition can be attributed to both design and manufacturing defects.[13] In their original reports, Poczynok and Dr. Francis opined that Armstrong landed with the ladder on top of him and primarily based their conclusions on that determination.[14]

There is no direct evidence proving Plaintiffs' "false lock" condition. The circumstantial evidence—the physical evidence from the scene—establishes the opposite. Photographs taken after the accident show Armstrong's ladder on the ground with the Lock Tabs fully engaged.[15] Armstrong is an OSHA-trained ladder user with many years of experience.[16] Armstrong has no memory of his accident but testified that he understood it was critical to check the Lock Tabs prior to climbing the ladder to make sure they were appropriately placed.[17] Additionally, neither neighbor testified that the ladder telescoped down.

Defendant filed two motions to exclude the testimony of Poczynok and Dr. Francis on

---

[11] *See* Dkt. No. 97-1 at 16; Dkt. No. 98-1 at 49–50.
[12] *See* Dkt. No. 97-1 at 16; Dkt. No. 98-1 at 49–50.
[13] *See* Dkt. No. 103 at 23–27.
[14] *See* Dkt. No. 97-1 at 16; Dkt. No. 98-1 at 24.
[15] Dkt. No. 98-4 at 19, 55–56.
[16] Dkt. No. 98-6 at 7.
[17] *See* Dkt. No. 98-9 at 10.

October 1, 2019.[18] Defendant also filed a Motion for Summary Judgment on October 7, 2019.[19] The Court held a hearing on August 14, 2020 to discuss the pending motions and a newly obtained audio recording of a 911 call *contemporaneously* made by one of the neighbors who witnessed Armstrong's fall. [20] In direct contrast to his later deposition testimony, the neighbor stated on the 911 recorded call, while standing over Armstrong's body in real time, that Armstrong was lying on top of the ladder.[21] The Court noted at the hearing that nothing in Poczynok's and Dr. Francis's reports theorized that Armstrong could have landed on top of the ladder.[22] To the contrary, both experts opinions were predicated on Armstrong landing *underneath* the ladder. Given that the 911 call was not available when Poczynok and Dr. Francis made their initial reports, the Court afforded Plaintiffs' experts the opportunity to supplement their reports in response to the call.[23] Poczynok and Dr. Francis subsequently completed supplemental reports.[24] Defendant renewed all their previous motions on November 20, 2020.[25]

## II.   LEGAL STANDARDS

### a.   Expert Testimony

Under Rule 702, a qualified expert may testify based on "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness

---

[18] Dkt. Nos. 35–36.
[19] Dkt. No. 39.
[20] *See* Dkt. No. 94.
[21] Dkt. No. 97-4 at 7–9.
[22] *Id.* at 18–19.
[23] *Id.* at 24.
[24] *See* Dkt. Nos. 97-10, 98-6.
[25] *See* Dkt. Nos. 96–98.

has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

To be admissible under Rule 702, an expert's proffered testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016). To satisfy the reliability prong, a "party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citing *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)). In determining the reliability of proffered scientific evidence, Courts may consider: "(1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance." *Caramba, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 4-19-cv-1973, 2020 WL 7684136, at *3 (S.D. Tex. Dec. 24, 2020) (citing *Daubert*, 509 U.S. at 593–94.)

The Court's gatekeeping role is to ensure that an expert's proffered testimony conforms with Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 269 (5th Cir. 2020). The Court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157; *Burleson v. Tex. Dept. of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004). An opinion offers no expert assistance to a jury where there is "simply too great an analytical gap between the data and the opinion proffered." *Chambers v. Exxon Corp.*, 247 F.3d 240, *2 (5th Cir. Jan. 5, 2001) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

b. <u>Summary Judgment</u>

Summary judgment is appropriate under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine factual issues. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading. *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In reviewing a motion for summary judgment, the Court bears the responsibility of taking the nonmovant's evidence as true and drawing all reasonable inferences in his favor. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). But the Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, the Court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   ANALYSIS

The Court will first address Defendant's Renewed Motions to Exclude the Testimony of Peter Poczynok and Dr. Peter Francis before turning to Defendant's Renewed Motion for Summary Judgment.

### a.   Peter Poczynok

Defendant argues the Court should exclude evidence of and results from Poczynok's climbing tests because his findings are unreliable.[26] Defendant highlights a number of issues that Poczynok's findings fail to explain: (1) how Armstrong landed on top of the ladder; (2) how the ladder was found with its upper extensions locked; (3) why the ladder was found climbing side up; and (4) how Armstrong could have improperly set-up the ladder.[27] Conversely, Plaintiffs argue the 911 call does not change Poczynok's causation theory because, no matter how the ladder landed, "[i]t does not change the *cause* of the climber's fall."[28] Thus, Plaintiffs contend Poczynok's testing and interpretation yields reliable results.[29] The Court agrees with Defendant.

Poczynok is a mechanical engineering expert who provided testimony on the design and function of the ladder.[30] In his findings, Poczynok opines that design and manufacturing defects caused a "false lock," which triggered the ladder to telescope and led to Armstrong's fall.[31]

---

[26] Dkt. No. 98 at 5.
[27] *Id.* at 10.
[28] Dkt. No. 103 at 10 (emphasis in original).
[29] *Id.* at 11.
[30] *See* Dkt. No. 98-1, 98-6.
[31] *See* Dkt. No. 98-6; Dkt. No. 98-4.

Poczynok further proposes alternative designs for the ladder's Lock Tab system's J-Lock tip and the extension rail holes.[32] As to the manufacturing defect, Poczynok contends the surface roughness and diameter on the J-Lock pin decreases the Lock Tab's spring strength.[33] Poczynok conducted multiple tests, but began with 15 climbing tests.[34] Ten of the climbing tests were set up in a "false lock" condition.[35] Only two tests in the "false lock" condition caused the ladder to telescope and then both the climber and the ladder to fall.[36] However, none of Poczynok's tests were able to fully recreate each element of Armstrong's accident, namely that both the climber and ladder would fall and the Lock Tabs would become reengaged.[37]

Beginning with how Armstrong landed on top of the ladder, Poczynok repeatedly opined in his initial report and in his deposition testimony that Armstrong landed on the ground with the ladder on top of him.[38] Poczynok dismissed EMT Miracco's testimony that he found Armstrong lying on top of the ladder and stated that EMT Miracco was "incorrect in his recollection."[39] Yet, the neighbor's 911 call (contemporaneously made and recorded) subsequently confirmed EMT Miracco's testimony. The Court explained at its August 14, 2020 hearing that nothing in

---

[32] *See* Dkt. No. 103 at 25–27.

[33] *See id.* at 23–25.

[34] Dkt. No. 98-1 at 29.

[35] *See id.* at 22–29. The first five tests were not set up in a "false lock" condition: the test climber never lost balance, the ladder never fell, and the ladder only slightly telescoped. (*See id.* at 17–22.)

[36] *Id.* at 24, 28.

[37] *See* Dkt. No. 98 at 15.

[38] Dkt. No. 98-1 at 24 (noting the test subject "brought the ladder with him" during his fall and noting that this was consistent was eyewitness testimony); Dkt. No. 98-4 at 13 (testifying during his deposition that testing showed the ladder was more likely to be on top of Armstrong, rather than Armstrong on top of the ladder, and that he believed EMT Miracco's testimony was incorrect); *Id.* at 51 (agreeing with Dr. Francis's depictions of Armstrong's fall).

[39] *Id.* at 13.

Poczynok's expert reports theorized that Armstrong could have landed on top of the ladder.[40] The Court allowed Poczynok the chance to reconcile his findings with the 911 call that confirmed Armstrong landed on top of the ladder.[41]

Poczynok, however, contends in his supplemental report that the 911 call, which contradicts his test results, is actually consistent with his theory.[42] Poczynok found the 911 call "offer[ed] nothing new with respect to the rest position of Mr. Armstrong after his fall" as it "supports the conclusion that Mr. Armstrong's fall is consistent with the release of a false-lock condition . . . ."[43] Specifically, Poczynok states, "[t]he ladder is in a position where it can land in a number of ways, both below the climber, or on top of the climber, depending on its rotation during the duration of the climber's fall."[44] The Court notes, as does Defendant, that Poczynok did not present additional testing, research, or data in his supplemental report.[45] More importantly, such explanation clearly contradicts Plaintiffs' theory that Armstrong fell backward while holding onto the ladder with his hands because it would have been scientifically impossible for the ladder to have then beat him to ground.

Next, photographs show that Armstrong's ladder was found with the Lock Tabs fully engaged.[46] Conversely, Defendant asserts that Poczynok's tests ended with the ladder on the ground with the Lock Tabs disengaged.[47] Poczynok claims his testing showed comparable results

---

[40] Dkt. No. 94 at 18–19.
[41] *Id.* at 24.
[42] Dkt. No. 98-6 at 5–6.
[43] *Id.* at 6.
[44] *Id.* at 11.
[45] Dkt. No. 98 at 7; *see* Dkt. No. 98-6 at 5–6.
[46] Dkt. No. 98-4 at 19, 55–56.
[47] *See* Dkt. No. 98 at 14.

to Armstrong's accident: the J-Locks reengaging themselves.[48] However, this is incorrect because none of the other tests correspond to what Poczynok opines caused Armstrong's fall. In the first five tests Poczynok conducted, the J-Locks reengaged themselves, but the upper section telescoped *less* than an inch, the climber never lost balance, the ladder never fell and Poczynok does not believe Armstrong set up the ladder in this manner.[49] Poczynok then conducted ten tests using his "false-lock" configuration and in only two of the tests (Tests #9 and #15) did the J-Locks reengage themselves after telescoping.[50] In neither test did the climber bring the ladder with him or fall to the ground.[51] Only two tests (Tests #6 and #10) involved a telescoping event in which the climber and the ladder fell.[52] In both, the climber's foot became trapped.[53] This entrapment, combined with the climber's fall, pulls the ladder over during testing. However, Plaintiff's own expert Dr. Francis opined that none of the tests after Test #6 are reliable in terms of the climber's reaction.[54] Poczynok cannot credibly assert that Test #6 tracks each element of Armstrong's fall while simultaneously contending that the Lock Tabs became reengaged. If Armstrong's foot became entrapped by the telescoping, the Lock Tabs could not have become reengaged. Absent any foot entrapment, Poczynok did not have one single test in which both the climber and ladder fell.

Photographs from the accident also show the ladder on the ground, climbing side up.[55] However, Poczynok's test results ended with the ladder on the ground, climbing side down.[56]

---

[48] Dkt. No. 98-6 at 20.
[49] *See* Dkt. No. 98-4 at 5–9.
[50] *See* Dkt. No. 98-1 at 17–29.
[51] *Id.* at 28–29.
[52] *Id.* at 24, 28.
[53] *Id.*
[54] Dkt. No. 97-1 at 8.
[55] *See* Dkt. No. 98-4 at 20–21.
[56] *See id.*

Defendant contends, and Poczynok agrees, that there is nothing to suggest the ladder was flipped over after the accident.[57] Plaintiffs, however, now contend that the ladder "can rotate about one foot during the fall event."[58] In an attempt to explain why the ladder was found climbing side down during his testing, Poczynok asserts the climber was belayed for his own safety and the climber's fall was arrested before impact due to the belay.[59] Notwithstanding Poczynok's contention, his testing fails to show how the ladder could both beat Armstrong to the ground and flip over during the accident.

Finally, Poczynok asserts that "[e]ither of the manufacturing defects, the rough surface of the bar upon which the spring is mounted as well as the undersized diameter of the bar, contribute to reducing the spring force applied to the J-lock."[60] However, there is no evidence that the Lock Tab springs failed to provide sufficient force. Poczynok never calculated the amount of force needed for the Lock Tab springs to perform appropriately because he never analyzed the issue.[61] Consequently, there is no existing data to which Poczynok can support his opinions regarding manufacturing defects in the ladder.

In sum, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co.*, 522 U.S. at 146. "A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *Id.* There is simply not enough facts or data to support Poczynok's theory. Nothing on the ladder shows that it was "false locked." Armstrong, an

---

[57] *Id.*
[58] Dkt. No. 98-6 at 19.
[59] *Id.*
[60] Dkt. No. 98-1 at 49.
[61] Dkt. No. 98-4 at 48.

OSHA-trained ladder user with many years of experience, testified that he understood the importance of checking the Lock Tabs prior to climbing the ladder to make sure they were appropriately placed.[62] The Court cannot ignore the disconnect between the testimony, the evidence, Poczynok's testing, and his conclusions. The Court bases its ruling on the absence of sufficient reliability, which renders the opinion unlikely to assist the jury, not on whether Poczynok is ultimately right or wrong. *See Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). Therefore, the Court recommends Defendant's Motion to Exclude the Testimony of Peter Poczynok be granted.

> b. <u>Dr. Peter Francis</u>

Defendant argues that the Court should exclude Dr. Francis's opinions because he fails to base his opinion on sufficient facts, ignores evidence that conflicts with Plaintiffs' theory, and fails to use recognized methodology in reaching his conclusions.[63] Conversely, Plaintiffs contend Dr. Francis's opinions are credible because he reasonably relied on Poczynok's findings and utilized sound biomedical principles to both the evidence and Armstrong's injuries.[64] The Court agrees with Defendant.

Dr. Francis is a biomechanical engineer who performed a biomechanical analysis and a reconstruction of the mechanisms that resulted in Armstrong's injuries.[65] Dr. Francis considered whether Armstrong could have landed on top of the ladder but found it was "biomechanically inconsistent with the physical evidence."[66] Dr. Francis stated "[i]t is more likely from a

---

[62] *See* Dkt. No. 98-9 at 10.
[63] Dkt. No. 97 at 14.
[64] *See* Dkt. No. 104 at 12.
[65] Dkt. No. 97-10 at 2.
[66] *Id.*

biomechanical standpoint that Plaintiff landed FACE UP with the ladder on top of him as opposed to FACE UP on top of the ladder."[67] Like Poczynok, Dr. Francis was given the opportunity to reexamine his findings against the 911 call that confirmed Armstrong landed face up on top of the ladder.[68] Whereas Poczynok opined the 911 call offered nothing new to the analysis, Dr. Francis referred to the 911 call as "new information."[69] Thus, in his supplemental report, Dr. Francis now finds that Armstrong and the ladder rotated during the fall backwards and this "rotation" explains how Armstrong landed on top of the ladder.[70]

Dr. Francis's opinions remain unsupported by both the physical evidence and the testimony. Defendant points to numerous instances where Dr. Francis's opinions are inconsistent, speculative, and unsupported. When reviewing whether improper climbing technique could have led to Armstrong's fall, Dr. Francis initially ruled out this scenario because a neighbor testified Armstrong's feet and hands remained on the ladder, but then acknowledged in his supplemental report that Armstrong's hands would "eventually come off the rails" in order for him to land on top of the ladder.[71] While Dr. Francis contends the 911 call provides new information, EMT Miracco's testimony that Armstrong landed face-up, on top of the ladder has never changed.[72] EMT Miracco's testimony was available to Dr. Francis during his initial report, but Dr. Francis dismissed it.[73] In reevaluating the evidence, Dr. Fancis now finds that Armstrong landing on top of the ladder, while once biomechanically unlikely, is likely. The Court agrees with Defendant that,

---

[67] Dkt. No. 97-1 at 9.
[68] Dkt. No. 94 at 24.
[69] Dkt. No. 97-10 at 18.
[70] *Id.* at 17–18.
[71] *Id.* at 18.
[72] *Id.* at 7.
[73] *Id.* at 15.

while the 911 call conclusively confirmed EMT Miracco's testimony, Dr. Francis was always on notice of this possibility. [74] That Dr. Francis chose to disregard EMT Miracco's testimony does not mean evidence of Armstrong falling on top of the ladder did not exist prior to the 911 call.[75] Dr. Francis reviewed the same evidence that he originally reviewed to now come to the opposite conclusion. Thus, the Court finds Dr. Francis's findings to be mere *ipse dixit*. *See MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, No. 05-cv-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) ("Opinions are excludable if they are supported only by the *ipse dixit* of the expert.")

"Experts are permitted to rely on assumptions when reaching their opinions." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 806 (N.D. Tex. 2018), *aff'd*, No. 3:11-CV-3296, 2018 WL 2064126 (N.D. Tex. May 2, 2018) (citing *Daubert*, 509 U.S. at 589); *see also Nova Consulting Grp., Inc. v. End'g Consulting Servs., Ltd.*, 290 Fed. Appx. 727, 732–33 (5th Cir. 2008) (finding that an expert's opinion was not unreliable simply because he made numerous assumptions). However, "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up, LLC*, 291 F. Supp. 3d at 806; *see also Rolls–Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at *6 (N.D. Tex. Jan. 14, 2010) ("Testimony is irrelevant . . . when an expert offers a conclusion based on assumptions unsupported by the facts of the case."). Because Dr. Francis's opinions are not adequately reliable to be admissible, the Court recommends Defendant's Motion to Exclude the Testimony of Dr. Peter Francis be granted.

c. <u>Summary Judgment</u>

Finally, Defendant moves for summary judgment.[76] Defendant contends that Plaintiffs fail

---

[74] *See* Dkt. No. 97 at 19.
[75] *Id.*
[76] *See* Dkt. No. 94 at 24.

14 / 17

to present sufficient evidence of a design defect and that Plaintiffs cannot connect any alleged manufacturing defects with Armstrong's accident. To establish a design defect under Texas law, "a plaintiff must prove (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1040 (5th Cir. 2011). Further, under Texas law, a products liability claim based on a manufacturing defect requires "[a] plaintiff to prove the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries." *Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 802 (S.D. Tex. 2019) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

Under Texas law, causation in a products liability case does not need to be proved by direct evidence. *See Goodner*, 650 F.3d at 1044. Causation can be proved by circumstantial evidence, but proof must be more than a guess or conjecture. *Id.* (citing *Mosley v. Excel Corp.*, 109 F. 3d 1006, 1009 (5th Cir. 1997)). Simply stated, Plaintiffs' causation theory is a guess and is contradicted by the indisputable physical evidence.

Additionally, Plaintiffs' "false lock" causation theory and allegations as to the ladder's design and manufacturing defects are dependent upon Poczynok's and Dr. Francis's opinions.[77] Plaintiffs argue Defendant's motion demonstrates that there are factual disputes to be resolved and that this is a classic "battle of the experts" case.[78] However, as discussed above, the Court recommends excluding both of Plaintiffs' experts. Without the expert opinions of Poczynok and

---

[77] *See* Dkt. No. 97-1 at 16; Dkt. No. 98-1 at 49–50.
[78] Dkt. No. 105 at 28.

Dr. Francis, there is no factual dispute and Plaintiffs' causation theory lacks sufficient evidence.

Photographs show that Armstrong's ladder was found with the Lock Tabs fully engaged after the accident.[79] Armstrong's background and experience does not show that he would set his ladder up in a "false lock" condition. The neighbors did not testify to witnessing the ladder telescope. There is no physical evidence that the ladder telescoped. Without expert reports to support their case and no evidence of a "false lock," Plaintiffs fail to establish a design defect.[80] Further, without evidence as to how the roughness of the J-bar surface or the smaller shaft diameter is connected to Armstrong's accident, Plaintiffs fail to establish a manufacturing defect because there is no evidence that the Lock Tab springs in the ladder failed to deliver sufficient force to perform as intended. Plaintiffs' burden cannot be satisfied "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Baird v. Shagdarsuren*, No. 17-CV-2000, 2020 WL 208815, at *3 (N.D. Tex. Jan. 14, 2020) (quotations omitted); *see Greaves, Ltd. v. Shippers Stevedoring Co.*, 921 F. Supp. 2d 697, 730–31 (S.D. Tex. 2013) (citing *Loeser v. Sans One, Inc.*, 187 S.W.3d 685, 686 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)) ("A plaintiff's 'best guess' of the cause of an accident is too speculative to establish cause-in-fact.") Plaintiffs "must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted." *Evans v. Toyota Motor Corp.*, No. 03-cv-09, 2005 WL 2001141, at *2 (S.D. Tex. Aug. 18, 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Consequently, the Court recommends that Defendant's Renewed Motion for Summary Judgment be granted.

---

[79] Dkt. No. 98-4 at 19, 55–56.

[80] Because the Court did not find there was a design defect, it need not reach the question of whether there was a safer alternative design.

## IV.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Defendant's Renewed Motion to Exclude the Testimony of Dr. Peter Francis (Dkt. No. 97) and Defendant's Renewed Motion to Exclude the Testimony of Peter Poczynok (Dkt. No. 98) be **GRANTED**. The Court **FUTHER RECOMMENDS** that Defendant's Renewed Motion for Summary Judgment (Dkt. No. 96) be **GRANTED** and the case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on September 3, 2021.

Sam S. Sheldon
United States Magistrate Judge